## EBENEZER E. DYER *vs.* SAMUEL SANFORD.

An easement cannot be extinguished or renounced by a parol agreement between the owner of the dominant and the servient tenement.

A license, given by the owner of the dominant to the owner of the servient tenement, to obstruct an easement, is not revocable after it is executed, and may operate as an abandonment of the easement, to the extent of such license.

The owner of a dominant tenement may make such changes in the use and condition of his estate as to renounce the easement; and this may be relied on, by the owner of the servient tenement, as an abandonment thereof: But, in order to prove such abandonment, it must be shown that the acts relied on were done voluntarily by the owner of the inheritance, who had authority to bind the estate by his grant or release, and were of so decisive and conclusive a character as to prove his intention to abandon the easement.

A. conveyed to B., in 1799, land and a new house thereon, bounding said land northerly on the estate of D.: B.'s administrator conveyed to D. a narrow piece of B.'s land

adjoining the land of D., " reserving to the house of B. the right of eaves-drops where it bounds on said lot, and also the right of forever keeping open the staircase window at the back of said house, bounding on said lot," said window being twenty-five inches distant from the line of D.'s land, as it stood before said narrow piece was conveyed to D. : The widow of B., having a right of dower in his said estate, and being in the oc cupation thereof, afterwards gave a parol license to D. to stop up said window, and he accordingly did so : The devisees of D., in 1805, conveyed his estate to I., by deed of warranty, " subject to the reservations expressed in the deed of B.'s administrator to D., of the right of eaves-drops, where the estate late of B. bounds on the land sold by said administrator to D., and the right of forever keeping open the staircase window at the back of the house bounding on said land : " In 1836, the estate of B. was con- veyed to E. : In 1831, W., who then owned D.'s estate, partially obstructed said window ; and it remained so obstructed for two or three years, when W. sold said estate, which was afterwards conveyed to S., who, in 1841, wholly obstructed the entrance of light and air through said window, and cut off the eaves of said house, by building up a brick wall on the line of his (S.'s) land ; and E. brought an action against him to recover damages therefor. *Held,* that the easements reserved in the deed from B.'s administrator to D. were not extinguished, renounced or abandoned, by the license given by B.'s widow, and the acts of D. & W. *Held also,* that the reservation in the deed from D.'s devisees to I. precluded S., who was privy in estate with I. from setting up said license. *Held also,* that the reservation, in the deed of B.'s administrator to D., of the right of keeping open the window, was merely a right then existing, to wit, the right to light and air coming from the space of twenty five inches between the window and the line of D.'s land as it stood before that deed was given, and that E. was not entitled to recover damages of S. for any obstruction of the light and air by an erection on the original line of D.'s land.

In an action of trespass upon the case, the plaintiff alleged, in his first count, that before and on the first day of April 1841, he was possessed of a dwelling-house, situate on the westerly side of Atkinson Street, in Boston, in which house there was, and still of right ought to be, a large staircase win- dow, through which the light and air ought to have entered, and still ought to enter, for the convenient and wholesome use and enjoyment of said house ; but that the defendant, on said day, wrongfully erected a brick wall and building near to said window, and continued the same, so erected, to the day of the date of the plaintiff's writ ; whereby said house was darkened, and the light and air prevented from entering through said window. In the second count, it was alleged that the defendant, on said 1st of April, wrongfully destroyed the eaves on the northerly side of the house mentioned in the first count, and built a brick wall so nigh to the northerly wall of said house, as to prevent the plaintiff from having the means of conducting the water, falling upon the roof of said

house, from the said northerly wall thereof; whereby the said house was injured, and the cellar thereunder and the walls thereof were wet and injured, so that said house was made uncomfortable, unwholesome, and unfit for occupation.

The trial was before *Wilde*, J. who made the following report thereof: The plaintiff, to sustain his claim, introduced a deed of the estate in question, dated June 5th 1799, from Mary Rand to Christopher Tilden, bounding it northerly on the estate of Thomas Davis; also a deed from Nathaniel T. Tilden, administrator of the estate of Christopher Tilden, to said Thomas Davis, dated November 23d 1802, and recorded on the 5th of January 1803, by which said administrator, under license, sold and conveyed to said Davis a gore or strip of the land of said Tilden deceased, adjoining the estate of said Davis, which strip was one foot wide on Atkinson Street, and four feet wide in the rear, and in which deed was this reservation, viz. "reserving, however, to the dwelling-house of said deceased, Christopher Tilden, the right of eaves-drops where it bounds on said lot, and also the right of forever keeping open the great staircase window at the back of said house, bounding on said lot." It was in evidence that the window thus mentioned was in the back part of the house of said Tilden, and twenty five inches distant from the line of the estate of said Davis, as it stood before this conveyance. The house of said Tilden was not shown to have been erected earlier than the year 1799.

The plaintiff also read in evidence a deed from George Sullivan, administrator *de bonis non* of said Christopher Tilden, dated October 1819, by which, under an alleged license, he sold to James Dalton "all the right, title and interest, that Christopher Tilden had, at the time of his decease, in and to the land and dwelling-house, as the same is now marked by fences and the line of the house aforesaid and buildings next to the adjacent lands; the same being now as they have been for some years, particularly during the occupancy of Mrs. Elizabeth Tilden, the widow of said Christopher; with the privileges and appurtenances thereto belonging." The plain-

tiff then put in a deed, from James Dalton to Peter R. Dalton, of the same premises on which said dwelling-house stood, dated May 2d 1820, and a deed from Peter R. Dalton, dated July 31st 1836, of the northerly part of the same premises.

Objection being taken by the defendant, that the sale by George Sullivan was void, because the license therefor was granted too late, and the judge inclining to that opinion, the plaintiff introduced evidence that Christopher Tilden left two sons and one daughter; that one of them, Christopher, died in 1818, unmarried, childless and intestate, in the life time of his mother; that said James Dalton married the daughter, Elizabeth, and had issue by her; that he was dead, and that the other son, William B., is still alive. The plaintiff also read in evidence a deed from said William B. Tilden to said James Dalton, dated April 28th 1824, quitclaiming his interest in the premises; and also a deed of Elizabeth, the widow of said Christopher, to said Dalton, dated October 1st 1819, of her interest in the premises.

The plaintiff also gave evidence of the obstruction complained of in his writ, said obstruction being the south wall of the house erected in 1841, by the defendant, on his estate, which wall was distant four inches from the window and upper wall of the plaintiff's house, and close upon his foundation wall; and that prior to the defendant's erecting said wall, he was forbidden to do so, on account of said window.

The plaintiff also read in evidence the last will of said Thomas Davis, proved on the 25th of January 1805, (by which he devised all his real estate, without any description thereof,) and a warranty deed, dated May 14th 1805, made by the devisees of said Davis to James Ivers, under whom the defendant claimed title, conveying the estate of said Davis; in which deed the title of said Davis is recited to have been derived from three conveyances, namely, from John Osborne, H. & A. Stimpson, and Nathaniel T. Tilden, administrator; "with all the privileges and appurtenances thereto belonging, and subject to the reservations, mentioned and expressed in the said deed from the administrator of Christopher Tilden deceased.

of the right of eaves-drops where the estate late of said Tilden bounds on the land sold by said administrator to said Davis, and the right of forever keeping open the staircase window at the back of the house bounding on said land."

The defendant introduced the deposition of Esther Wheelwright, (which was objected to by the plaintiff,) for the purpose of proving that Elizabeth Tilden, widow of said Christopher, while she occupied the plaintiff's premises, after the purchase of said strip of land of the administrator of said Christopher, licensed said Thomas Davis, by parol, to stop said window, and that he accordingly did so. The defendant also introduced one Whipple as a witness, who testified that, in 1831, he owned the defendant's estate ; that there was then a shed on said estate, adjoining the north side of the plaintiff's house, which did not extend up to said window ; that he added one story, which covered said window, and so remained three years, until he (Whipple) sold and left the estate ; that when he built up this story, he called on Peter R. Dalton, who then owned the plaintiff's estate, and gave him notice that, according to a survey of the premises made by T. P. Fuller, the wall of said Dalton's house was three inches on said Whipple's line, and that, in the rear, Dalton was two feet on said Whipple's land ; that he told Dalton that he intended to erect three brick buildings on Atkinson Street ; that he said nothing to Dalton about said window ; and that Dalton did not, at that time, live in his house, but that it was in the occupation of his tenants. The defendant also introduced one Page as a witness, who testified that, in February or March 1841, there was a shed against the defendant's house, which covered the lower part of said window, but not the upper part thereof.

The plaintiff then introduced evidence tending to contradict the facts thus attempted to be proved by the defendant.

The defendant's counsel contended that, upon these facts, if established, a direct license had been shown, or proof upon which the jury might infer a license, by the owners of the plaintiff's estate, to the owners of the defendant's estate.

to shut out and obstruct the light from entering said window, and that such license was not revocable by the plaintiff; that in fact the easement in question, if it ever existed, had been lost by non user and cessation of enjoyment; and that, if not extinguished by said license or non user, the extent of said right was to such light and air as was received out of Christopher Tilden's estate to the distance of twenty five inches, and no more, from the window.

It was ruled, for the purpose of reserving the questions for the court, that as to the license alleged to have been proved, by Esther Wheelwright's deposition, to have been given to Thomas Davis, it could not, if proved, avail the defendant, inasmuch as, by law, some conveyance in writing, by deed duly executed, is necessary to release or extinguish the easement so reserved as aforesaid; and further, that if it were otherwise, yet as the defendant claimed title through and under the conveyance aforesaid of the devisees of said Davis, in which said easement is expressly recited as existing, the defendant could not by law avail himself of that as an extinguishment; that the erection made by Whipple, under the circumstances hereinbefore recited, and continued as aforesaid, were not competent or sufficient in law to extinguish said easements; and that, as the defendant claimed title under the deed from the devisees of said Davis to Ivers, the right of the plaintiff to light and air through said window was not necessarily to be confined to the said space of twenty five inches, to which the estate of said Tilden extended.

A verdict was found for the plaintiff. New trial to be granted, if either of said rulings was wrong; otherwise, judgment to be rendered on the verdict.

*Bartlett,* for the defendant.

*E. D. Sohier,* for the plaintiff.

SHAW, C. J. This was an action on the case, for damage alleged to have been done by the defendant, in erecting a house on his own land, in such a manner as to obstruct the light and air which the plaintiff was entitled to through his staircase window. This was not claimed as a right by

prescription, for light and air through an ancient window, but as a right reserved in a deed from Nathaniel T. Tilden, administrator of the estate of Christopher Tilden, under which the plaintiff claims, to Thomas Davis, under whom the defendant claims.

1. The defendant offered evidence tending to show that Elizabeth Tilden, the widow of Christopher Tilden, having a right of dower in the estate, and being in the occupation, gave a license, by parol, to Thomas Davis, to erect a building in such manner as to obstruct the air and light, in whole or in part ; also that some obstructions were afterwards erected, by persons in the occupation of the defendant's estate, extending to a period of ten or twelve years ; and upon these facts, if established, contended that it ought to be submitted to the jury, to prove a license, by the owners of the plaintiff's estate, to the owners of the defendant's estate, to shut out and obstruct the light from entering said window ; and that such license was not revocable by the plaintiff. He also contended that, in fact, the easement in question, if it ever existed, had been lost by non user and cessation of enjoyment ; and that, if not so extinguished, yet the right to light and air was to such only as could be received, if the estate, derived by Davis from Tilden, and out of which the light was reserved, had been left open and unobstructed ; which was the distance of about two feet from the window. All these objections to the plaintiff's claim were overruled, and the question of damages was left to the jury.

We think there is a distinction between an executed license to impede or obstruct an easement of this description, and an abandonment of the easement. It may well be maintained, on the authorities, that the owner of a dominant tenement may make such changes in the use and condition of his own estate as, in fact, to renounce the easement itself ; and this may be relied on by the owner of the servient tenement as evidence of abandonment. So, if the owner of the dominant grants a license to the owner of the servient tenement, to erect a wall which necessarily obstructs the enjoyment of the ease-

34 *

ment, and it is erected accordingly, it may amount to proof of an abandonment of the easement. It is not a release, because it is by parol. But it results from the consideration that a license, when executed, is not revocable; and if the obstruction be permanent in its nature, it does, *de facto*, terminate the enjoyment of the easement. But the license is for the specific act only; and if, when executed, it is of such a nature as, *de facto*, to destroy the easement, but is only temporary in its nature, or limited in its terms, then, as the easement is not released, when the obstruction erected in pursuance of such specific license is removed, the owner of the servient tenement cannot erect another obstruction of the same, or of a different kind, without a new license.

But as, by the rules of law, an easement is an interest in land, to be acquired and released only by deed, as between the parties respectively, when it is contended that the owner of the dominant tenement has voluntarily abandoned his right, so as, *de facto*, to withdraw the incumbrance from the servient tenement, without a release to its owner, the proof must go to this extent: *First*, that the acts relied on were voluntarily done by the owner of the dominant tenement, or by his express authority; *secondly*, that such party was the owner of the inheritance, and had authority to bind the estate by his grant or release; and *thirdly*, that the acts are of so decisive and conclusive a character as to indicate and prove his intent to abandon the easement. *Moore* v. *Rawson*, 3 Barn. & Cres. 332, and 5 Dowl. & Ryl. 234. Various illustrations might be given of such conclusive acts of abandonment; as when one takes down the building in which a window was placed, and erects on the site a permament tenement, so constructed as not to require, or even permit, a window similarly situated; or when one grants an express license to do acts on his own land, the necessary effect of which is to take away or impair the easement permanently, and the acts are done accordingly. *Liggins* v. *Inge*, 7 Bing. 682, and 5 Moore & Payne, 712.

In the present case, applying these principles to the subject, we are of opinion that the evidence did not warrant the jury

to find an extinguishment of the easement. The license in question, and the acts done under it, could not operate as a release, because not in writing ; nor as an abandonment, because Elizabeth Tilden was not the owner of the inheritance, and had, at most, a right of dower in the premises, and the occupation, as guardian of her children, or otherwise ; nor could it operate as proof of release by adverse possession, because it had not continued a sufficient length of time.

2. It is contended that there was a misdirection by the Judge, in stating that the reservation, in the deed from the devisees of Thomas Davis to Ivers, precluded the defendant from setting up the supposed agreement between Elizabeth Tilden and Davis, in the life time of the latter. But the court are of opinion that this direction was right. The theory of the defendant is, that, by some parol license or agreement, Elizabeth Tilden had abandoned or relinquished to Davis the easement reserved in favor of Christopher Tilden's house, so that Davis held it free of that incumbrance, and devised it by general words of description, and died. What then were the circumstances under which the devisees were about to sell their estate to Ivers ? They were about to convey the estate with warranty. The deed recites the several deeds under which their devisor claimed title, one of which was the deed from Nathaniel T. Tilden, administrator of Christopher Tilden, containing the reservation in question for the benefit of the house belonging to the heirs of Christopher Tilden, which deed was on record. Now, if they knew that a parol license had been given, or an agreement made between Mrs. Tilden and their devisor, by which the easement was suffered to be extinguished or suspended, they might also know, or believe, either that she had no such authority, or that the obstruction which was authorized was temporary, or partial and conditional. They must have known, that whether it was ever made depended on parol proof, and did not, like the reservation itself, appear of record. If, for these or any other causes, they did not claim such abandonment, but admitted the continued existence of such easement, and conveyed the estate

subject to it, the loss was theirs, and not that of the grantee. When, therefore, they conveyed the estate to Ivers, with an express reservation of such easement, for the benefit of Tilden's house, we think the defendant, who is privy in estate with Ivers, is precluded from setting up such supposed abandonment to Davis. Ivers, by accepting the deed with such reservation, admitted the existence, at that time, of such easement in the proprietors of Tilden's estate, as an incumbrance on the estate conveyed.

3. The next direction given to which the defendant objected was, that by force of the reservation in the deed to Ivers, taken in connexion with the reservation in the deed from Tilden to Davis, the heirs of Tilden acquired a right to so much air and light as would come to said window over the space then open between said window and Davis's buildings, being in part over Davis's land, and was not confined to the air and light coming over the two or three feet of land conveyed by the same deed from Tilden to Davis. This instruction, we think, was not justified by the case.

In general, a reservation, like an exception, is something to be deducted from the thing granted, narrowing and limiting what would otherwise pass by the general words of grant.

It is well established, by the facts in this case, that at the time of the conveyance from Tilden to Davis, Tilden's was a modern house, and had acquired no right of light and air, for the staircase window, over Davis's land. Davis then had a right to build a wall quite on the extremity of his southern line. Was Davis's right to build on his own land diminished by his acceptance of this deed? We think not.

A case was cited from New York, by the plaintiff's counsel, to show that a reservation may be made of something not coming out of the estate granted, but from the grantee's own estate. *Case* v. *Haight*, 3 Wend. 635. As a proper reservation or exception, we think the principle stated is correct— that it must be something out of the estate granted. But we

have no doubt, that by apt words, even in a deed poll, a grantor may acquire some right in the estate of the grantee. It is not, however, strictly by way of reservation, but by way of condition or implied covenant, even though the term " reserving " or " reservation " is used. If a grant is made to A., reserving the performance of a duty, to wit, the payment of a sum of money to a third person, for the benefit of the grantor, an acceptance of the grant binds A. to the payment of the money. *Goodwin* v. *Gilbert,* 9 Mass. 510. So where a demise is made to A., reserving a rent in money or in service, it is not strictly a reservation out of the demised premises ; but the acceptance of it raises an implied obligation to pay the money. So we think a grant may be so made as to create a right in the grantee's land in favor of the grantor. For instance ; suppose A. has close No. 2, lying between two closes, Nos. 1 & 3, of B. ; and A. grants to B. the right to lay and maintain a drain from close No. 1, across his close No. 2, thence to be continued through his own close, No. 3, to its outlet ; and A., in his grant to B., should reserve the right to enter his drain, for the benefit of his intermediate close, with the right and privilege of having the waste water therefrom pass off freely through the grantee's close, No. 3, forever. In effect, this, if accepted, would secure to the grantor a right in the grantee's land ; but we think it would enure by way of implied grant or covenant, and not strictly as a reservation. It results from the plain terms of the contract.

But there is nothing in the terms of the reservation, in the deed from Tilden to Davis, which imports or implies any larger claim for air and light to this window than the owner lawfully had before. It is a simple reservation or exception, from the operation of the grant, of a right already existing, and nothing more ; and that too, in a deed by an administrator, executing a power over the estate of his intestate, and not acting, or professing to act, for the heirs. Besides ; the right reserved is to keep open the staircase window. It is not even said for air and light ; and that it was so intended, results only from reaso able implication. As the direct and ordinary pur-

pose of a deed poll is to transfer the rights of the grantor to the grantee, a grant, covenant or promise, by the grantee to the grantor, is not to be implied, except from such plain and express terms as will show that such was the intent of the grantee, manifested by his acceptance of the deed.

On this last ground, the verdict is set aside, and a new trial granted.